## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 7 |
| PAUL W. DIZINNO, | * | |
| Debtor | * | Case No. 1:14-bk-05291-MDF |
| | * | |
| MARK STEVEN TOMEY, SR., | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Adv. No: 1:15-ap-00012-MDF |
| | * | |
| PAUL W. DIZINNO, | * | |
| Defendant | * | |
| | * | |

## OPINION

On July 31, 2015, I dismissed the within adversary proceeding brought by the plaintiff,

Mark Steven Tomey, Sr. ("Tomey"). Tomey was seeking to except from discharge a series of

loans he made to Paul W. Dizinno ("Debtor") in 2011. Alternatively, he requested that Debtor's

discharge be denied. Tomey appealed the July 31, 2015 order, but the appeal was dismissed by

the District Court. Afterward, Debtor moved the Court to address two pending matters – Debtor's

amended motion under 11 U.S.C. § 523(d) for the payment of attorney's fees (the "§ 523(d)

Motion") and his motion for sanctions under Federal Rule of Bankruptcy Procedure ("Fed. R.

Bank. P.") 9011 ( the "Rule 11 Motion"). In both motions Debtor is asking the Court to require

Tomey to compensate him for the attorney's fees he incurred defending the adversary

proceeding. For the reasons discussed below, the § 523(d) Motion will be denied and the Rule 11

Motion will be granted.

### I.  Procedural History

For a case decided on a motion to dismiss, the procedural history of this matter is

somewhat lengthy and convoluted.  The history of this proceeding was outlined in my

July 31, 2015 Opinion, but brief repetition and supplementation is required for purposes of ruling on the two motions before me.

Debtor filed his Chapter 7 bankruptcy petition on November 14, 2014. On January 22, 2015, Tomey filed a document entitled "Motions to preclude petitioners debt from bankruptcy or squash bankruptcy, order for Trustee examination and hearing" ( the "Complaint"). In the Complaint, Tomey provided extensive detail on his friendship with Debtor and his efforts to provide him with financial advice and assistance. He also described the loans he made to Debtor, and Debtor's failure to repay the debt. Tomey also reported on his interactions with the Chapter 7 trustee and Debtor's counsel at the creditors' meeting.

In the "Argument" section of his pleading, Tomey invoked a variety of general legal principles, some with no relevance to a bankruptcy proceeding, but he did cite § 523(a)(2)(A) of the Bankruptcy Code as grounds for excepting the debt owed to him from discharge and to § 727(a)(3),(4), and (5) as grounds for denial of Debtor's discharge. Because Tomey was not represented by an attorney, the Court liberally construed the pleading as a complaint seeking an exception from discharge under § 523(a)(2)(A) and a general denial of discharge under § 727(a)(3), (4), and (5).

On June 11, 2015, the Court granted Debtor's motion to dismiss the Complaint, but gave Tomey an opportunity to amend the pleading to assert a cause of action under § 523(a)(2)(A), § 727(a)(4) and § 727(a)(5). Tomey filed his Amended Complaint on June 24, 2015 substantially repeating the allegations set forth in the Complaint, but reformatting the statements in paragraph form. Tomey premised his Amended Complaint on two clusters of facts. Tomey described a series of unsecured loans he made to Debtor in 2011. Attached to his Amended Complaint was a

2

document dated June 7, 2011, signed by Debtor, in which he acknowledged that he had received a series of loans from Tomey totaling $4400. The document also included a statement that "Mark Tomey Sr. is not charging me interest, and I promise to endeavor to repay the full amount within one year from today's date." In his bankruptcy schedules Debtor admitted that at the time he filed his bankruptcy petition he had not repaid any of the amounts loaned by Tomey. In support of his request for a general denial of Debtor's discharge, Tomey asserted a second cluster of facts in which he stated that Debtor had certain used stereo equipment, bicycles, and appliances that he had repaired and sold, the proceeds of which he used to pay other debts, but which were unaccounted for in his schedules and statements.

On July 31, 2015, I dismissed the Amended Complaint with prejudice for failure to state a claim upon which relief could be granted. I again determined that Tomey had failed to adequately set forth allegations of fraud. Further, his assertions about undisclosed assets remained vague and ill-defined. On August 17, 2015, Tomey filed a motion to reconsider, but pending the Court's decision on the motion, Tomey appealed to the District Court. I later denied reconsideration of the order dismissing the adversary case. The District Court dismissed the appeal on June 30, 2016.

After Tomey filed the Complaint, Debtor filed a motion to dismiss. He also filed a motion seeking an award of counsel fees under § 523(d). Tomey responded to the motions and further moved the Court to enjoin opposing counsel from harassing him or attempting to "coerce" him to withdraw the adversary proceeding. In the meantime, I dismissed the original Complaint and Tomey filed the Amended Complaint. The motion for fees under § 523(d) was not addressed

3

before the Amended Complaint was dismissed with prejudice. Debtor then filed an amended

motion, the § 523(d) Motion that is now before me.

In response to the § 523(d) Motion, Tomey filed a "Cross Complaint/Counterclaim" (the

"Counterclaim") repeating his prior assertions that Debtor's attorney had "used intimidation and

harassment to harm" him and had "slandered and libeled" him. In his request for relief, Tomey

sought $6000 in compensatory damages, $2.5 million in punitive damages, and $2.5 million in

"exemplary" damages from Debtor's counsel.[1]  On June 6, 2015, the Court held a hearing on the

§ 523(d) Motion and ruled that because of the pending appeal on the underlying complaint, the

issue of whether Tomey should be required to pay Debtor's attorney's fees was not ripe for

decision.

In  response to Tomey's Counterclaim, Debtor filed the Rule 11 Motion. Debtor argued

that the Counterclaim was improper because the allegations were "virtually identical" to those

made in the Amended Complaint, which had been dismissed with prejudice. In his demand for

relief, Debtor reiterated his request for attorney's fees as set forth in the § 523(d) Motion and also

requested the imposition of a bar to future filings. Tomey filed an answer denying that his

conduct was improper in any way and requested that the Rule 11 Motion be dismissed. At the

hearing on this matter, I did not impose monetary sanctions pending a decision on the appeal, but

I did issue an order limiting the pleadings that both parties were permitted to file while awaiting

the District Court decision.

---

[1] I attempted to explain to Tomey on several occasions that under Rule 11, Debtor's
counsel is required to request a party to withdraw an allegedly objectionable pleading before
seeking sanctions. Nevertheless, Tomey continues to characterize counsel's action as harassment
carried out with the intent to deny him due process.

4

On June 30, 2016, the District Court dismissed Tomey's appeal, and Debtor's discharge was granted on August 24, 2016. A combined hearing on the within motions was scheduled for October 19, 2016. Tomey filed an answer to the order setting the hearing on the fee motions arguing that he should be permitted to try the Amended Complaint on the merits. He further asserted that the Amended Complaint was not "substantially unjustified." Tomey has not alleged special circumstances in defense of this motion, most likely because he remains convinced that his cause of action is meritorious and that he should be permitted to go to trial. More generally, however, Tomey repeatedly has asserted that he is entitled to special consideration because he is disabled and is appearing pro se.

Although the § 523(d) Motion and the Rule 11 Motion were set for hearing, having reviewed the pleadings and the record of prior proceedings in this case, the Court has determined that no further hearing is necessary in order to decide this matter.[2] Therefore, the Court is now prepared to rule on both motions.[3]

---

[2]    The bankruptcy court may, in most circumstances, reach its § 523(d) fee award determination without the necessity of an evidentiary hearing. Seldom will facts be in dispute. Rather, the court will merely be applying statutory standards to a fully developed record. In such cases, so long as the creditor has notice and an opportunity to respond, due process will be satisfied. A fees contest should not spawn a second lawsuit. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

*Bridgewater Credit Union v. McCarthy (In re McCarthy)*, 243 B.R. 203, 210 (B.A.P 1st Cir. 2000). Although this matter was decided on a dispositive motion rather than after an evidentiary hearing, ample evidence has been entered on the record to enable the Court to decide these motions.

[3]The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core, non-*Stern* proceeding under 28 U.S.C. § 157(b)(2)(A), (L) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7052.

## II. Discussion

*A. The § 523(d) Motion*

If a creditor unsuccessfully prosecutes an adversary proceeding to declare a consumer debt excepted from discharge under § 523(a)(2), "the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust." 11 U.S.C. § 523(d).

Section 523(d) was enacted "to prevent the abusive practices of consumer finance companies, who often filed bad faith dischargeability actions" hoping a debtor would settle the claim rather than incur the expense of defending the case. *Swartz v. Strausbaugh (In re Strausbaugh),* 376 B.R. 631, 637 (Bankr. S.D. Ohio 2007) (citation omitted). While the Supreme Court has not specifically interpreted § 523(d), this subsection is modeled on a standard previously adopted in the Equal Access to Justice Act ("EAJA"). *In re Hunt*, 238 F.3d 1098, 1103 (9th Cir. 2001); *Matter of Hingson*, 954 F.2d 428, 429 (7th Cir. 1992).[4] The EAJA is designed to "remove an obstacle to contesting unreasonable governmental action through litigation." *Goldhaver v. Foley*, 698 F.2d 193, 197 (3d Cir. 1983). "The purpose of the EAJA is . . . to deter the government from bringing unfounded suits or engaging in arbitrary or unjust administrative behavior. That goal is in part achieved by rectifying the 'disparity in resources and expertise of . . . individuals and their government.'" *Oguachuba v. INS*, 706 F.2d 93, 98 (2d Cir. 1983) (quoting H.R. Rep. No. 1418, 96th Cong., 2d Sess. at 6, *reprinted in* 1980 U.S. Code Cong. & Ad. News, 4984.) Therefore, both in the EAJA and in § 523(d), Congress has provided

---

[4]The EAJA, 28 U.S.C. §2412(d)(1)(A), governs claims for attorneys fees by prevailing parties in any civil action, other than tort claims, brought by or against the federal government.

6

a means to balance the power between individuals on one hand and governmental or financial institutions on the other. The issue this Court must decide is whether a statute enacted to address abuses by institutional lenders, but not limited to a particular class of creditors, should be applied with equal rigor to a pro se creditor.

The practice of permitting a party to recover its fees from an opposing party is an exception to the general rule. Recently, the Supreme Court reiterated its long-held position that courts generally apply the American Rule. "Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts LLP v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.* 560 U.S. 242, 252-53 (2010)). Section 523(d) is a statutory exception to the American Rule in cases brought under 11 U.S.C. § 523(a)(2). The purpose of the fee provision is "to discourage creditors from filing § 523(a)(2) complaints "without first carefully reviewing the legal and factual bases for their fraud-based nondischargeability claims.*" McCarthy*, 243 B.R. at 208; *Mfr. Hanover Trust Co. v. Hudgins*, 72 B.R. 214, 219 (N.D. Ill. 1987); *Rice, Heitman & Davis v. Sasse (In re Sasse)*, 438 B.R. 631, 650 (Bankr. W.D. Wisc. 2010). Thus, a creditor filing a complaint under § 523(a)(2) must be certain that his case is "substantially justified" or be prepared to reimburse the debtor for legal fees incurred defending the complaint.

The burden of proof under § 523(d) first rests on the debtor. In order to recover attorney's fees a debtor has the burden to prove: (1) that the creditor requested that a debt be excepted from discharge under § 523(a)(2); (2) that the debt was a consumer debt; and (3) that the debt was discharged. *Am. Sav. Bank v. Harvey (In re Harvey),* 172 B.R. 314, 317 (B.A.P. 9th Cir. 1994) (citing *In re Kullgren,* 109 B.R. 949, 953 (Bankr. C.D. Cal. 1990)). *See also Swenby v. Swenby (Matter of Swenby),* 529 B.R. 705, 707 (Bankr. D. Wisc. 2015)*; Davis v. Melcher (In*

*re Melcher)*, 322 B.R. 1, 5 (Bankr. D.C. 2005). Once the debtor meets his burden, the creditor must offer evidence to prove that his position was substantially justified or that special circumstances exist that would make a damages award unjust. *AT&T Universal Card Serv. Corp. v. Williams (In re Williams),* 224 B.R. 523, 529 (B.A.P. 2nd Cir. 1998); *In re Harvey,* 172 B.R. at 317. The burden is placed on the creditor to justify its actions "because it is far easier for the creditor to demonstrate the reasonableness of its actions than it is for the debtor to marshal the facts to prove that the creditor was unreasonable." *Heritage Pac. Fin. v. Machuca (In re Machuca)*, 483 B.R. 726, 734-35 (B.A.P. 9th Cir. 2012) (quoting S. Rep. No. 98-65 at 59). A creditor's burden to establish that his litigation was substantially justified requires more than a showing that the claim was not frivolous. But simply because a creditor loses does not conclusively establish that the case was not substantially justified. *Id.* at 735.

Here, Debtor's burden under § 523(d) is easily met. Tomey filed a complaint alleging actual fraud under § 523(a)(2), and the complaint was dismissed. Debtor's discharge has been entered. As to the remaining prong of the three-part test, the parties agree that Tomey made a series of loans to Debtor primarily to enable him to catch up on real estate taxes. Accordingly, the debt at issue is a consumer debt. Debtor having established the three factors necessary to meet his burden, it became incumbent on Tomey to show that he was substantially justified in bringing the § 523(a)(2) complaint or that because of special circumstances, an award of attorney's fees would be unjust.

### 1. When is a § 523(a)(2) complaint "substantially justified?"

A lawsuit is "substantially justified" under the EAJA if it is "justified to a degree that could satisfy a reasonable person" or when it has " a reasonable basis both in law and in fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As observed by the Court of Appeals for the

8

Ninth Circuit, the legislative history of § 523(d) states that Congress explicitly adopted the EAJA standard explaining that "to avoid a fee award, the creditor must show that its challenge had a reasonable basis both in law and in fact." *Hunt,* 238 F.3d at 1103 (quoting S. Rep. No. 98-65 at 59 (1983)).

Under the EAJA, courts have followed a calibrated approach when assessing whether the government's case was "substantially justified." For example, if the government loses its case because it pressed a position "flatly at odds with the controlling case law," its actions are not substantially justified. To the contrary, if the government loses after advancing an unsettled question of law, its actions may be substantially justified. *Melcher*, 322 B.R. at 8 (quoting *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173-74 (D.C. Cir. 2005)). Evaluating whether a creditor's actions are substantially justified in the context of § 523(d) also demands careful consideration of whether the claim asserted is governed by settled law or involves novel legal issues.

In the context of § 523(d) actions, courts have adopted two general approaches when evaluating whether litigation was substantially justified. *See McCarthy*, 243 B.R. at 208-09. Some courts apply a three-factor test – is there "a reasonable basis in law for the theory it propounds; a reasonable basis in truth for the facts alleged; and a reasonable connection between the facts alleged and the legal theory advanced." *Williams*, 224 B.R. at 531; *see also In re Pappan,* 334 B.R. 678 (B.A.P. 10th Cir. 2005)*;Sasse,* 438 B.R. at 651. Other courts evaluate the totality of the circumstances. *Williams,* 224 B.R. at 531. For example, in *Bank of Am. v. Miller (In re Miller)*, 250 B.R. 294, 297 (Bankr. E.D. Ky. 2000) the court reasoned that if the creditor attended the § 341 meeting or conducted a Rule 2004 examination before filing his adversary case, this pre-trial investigation supports the argument that the creditor's actions were

9

substantially justified. Use of these discovery tools tend to show that the creditor reasonably investigated the facts before filing his complaint. The three-factor test and the totality of the circumstances test are compatible. In fact, some courts have applied the three-factor test as an element of the totality of the circumstances analysis. *McCarthy*, 243 B.R. at 208.

### 2. Analyzing "substantial justification"

The totality of the circumstances approach is the most appropriate method to determine whether Tomey's cause of action was substantially justified. I not only must assess Tomey's actions when the Complaint was filed, but also his behavior throughout the course of the litigation. *FIA Card Serv., N.A. v. Conant*, 476 B.R. 675, 683 (D. Mass. 2012). "A creditor is not justified in continuing to pursue a case once it learns that its position is not substantially justified, even if the suit was originally filed in good faith. *Swenby*, 529 B.R. at 709-710. Substantial justification is not present when a creditor proceeds "past the point where it knew, or should have known, that it could not carry its burden of proof." *Williams*, 224 B.R. at 530 (other citations omitted).

In this case, judgment was entered against Tomey on a motion to dismiss. When a case is decided before trial, most courts look to the complaint to determine if the creditor's position was substantially justified. *Farmway Credit Union v. Eilert (In re Eilert)*, Adv. No. 13-7037, 2014 WL 932127, *2, n. 13 (Bankr. D. Kan. March 10, 2014) (citing cases). While I agree that the Complaint is an appropriate starting point, I remain mindful that this proceeding was initiated by a pro se creditor. Pleadings of pro se litigants are construed more liberally than those prepared by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) *cited in Velardi v. Countrywide Bank, FSB (In re Velardi)*, 547 B.R. 147, 152 (Bankr. M.D. Pa. 2016). But while it is appropriate to consider a pro se plaintiff's lack of legal sophistication, a self-represented party is not excused

from the requirement that a plaintiff must allege sufficient non-conclusory facts to state a cognizable claim. A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). A complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," even when filed by a pro se party, cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)).

"A pro se litigant is under the duty to ascertain what legal means are available to him *before* he acts. He may not learn the law literally by trial and error at the expense of the other parties." *Upadhyay v. Burse (In re Burse)*, 120 B.R. 833, 837 (Bankr. E.D. Va. 1990) (emphasis in original). Here, Tomey's initial filing was liberally construed as a complaint. When the Court determined that it failed to adequately set forth a cause of action, Tomey was provided with an opportunity to amend his complaint to address this deficiency. Instead, Tomey continued to allege that Debtor' broken promise to correct his financial difficulties was conclusive evidence that Debtor had engaged in fraud.

A broken promise to repay a loan is not fraudulent, unless the promisor did not intend to keep the promise at the time it was made. *Piper v. Am. Natl. Life Ins. Co. of Tex.*, 228 F. Supp 2d 553, 560 (M.D. Pa. 2002) (citing Restatement (Second) of Torts § 530(1)). Under Pennsylvania law, "promises to do future acts do not constitute a valid fraud claim." *Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Inv.*, 951 F.2d 1399, 1409 (3d Cir. 1991) (quoting *Wood v. RR Donnelley & Sons* Co., 881 F.2d 313, 318 (3d Cir. 1989)). Changing one's mind or failing to follow through on a promise is not the same as a fraudulent misrepresentation. In the Amended Complaint Tomey described the loan transactions as follows:

11

> [Debtor] came to [Tomey] stating that he could not pay his property taxes, as he had not been escrowing them with his mortgage payment. Also [Debtor] asked for some other small loans. In the end the loans totalled [sic] $4,400.00. [Tomey] entered into these loans with the understanding that [Debtor] was a trustworthy friend that just needed a breather to get himself straightened out. [Debtor] promised him to include his taxes in his mortgage payments and do whatever it took to get caught up with his debts and then pay back their loan agreement as soon as possible. At the time [Debtor] had a Chevy 6.2l diesel pickup, (2) Oldsmobile diesel cars, a wrecked Dodge cummins diesel pickup, a 1956 Dodge panel truck, high end stereo equipment, and other items that could liquidated to pay back the debt if all else failed. [Debtor] was claiming to make extra money buying/selling/repairing stereo equipment and appliances. It was made clear to [Debtor] the need to repay the loans. [Debtor]signed a promissory note promising to repay the loans provided him.

Amended Complaint, p. 2, ¶ 3 (emphasis in original). Tomey later reiterates in the Amended Complaint that his claim of fraud is not related to Debtor's promise to repay the loan, but to Debtor's failure to do "whatever it took" to "correct his finances." Amended Complaint, p. 8, ¶ 1 (e)(1) and (2).

Tomey has argued that Debtor failed to do all he thought Debtor could do to change his financial situation after the loans were made. Because he failed to repay the loans and failed to follow a course of action to remediate his troubled financial condition, Tomey concludes that Debtor must have misrepresented his intention to repay the loans when he received them. These bald, conclusory assertions are inadequate to support an exception to discharge. In the opinion issued in connection with the dismissal of the first complaint, I explained to Tomey what he needed to allege and ultimately prove to establish fraud. Tomey, however, continued to make the same conclusory allegations of fraud and misrepresentation throughout the proceeding, ignoring my guidance, and moving ahead on his chosen course.

This is not to say that there are no circumstances under which Tomey could have made out a case under § 523(a)(2). If Tomey had alleged that Debtor requested a loan and in support of

12

the request made representations to Tomey that he would sell certain assets to repay the loan or that he would use the income from a second job to repay the loan and that he justifiably relied on these representations, he could have successfully alleged a cause of action under § 523(a)(2)(A). No such allegations were made, however, in this case.

There are numerous reported decisions interpreting § 523(d), but few have tackled the issue in the context of an adversary proceeding initiated by a pro se creditor. The handful of cases involving pro se creditors, often landlords, have reached varying conclusions as to whether a plaintiff's pro se status should be considered when evaluating whether a § 523(a)(2) complaint is substantially justified.

In *Burse*, a pro se landlord filed a complaint seeking to except from discharge a debt for unpaid rent or, alternatively, to deny the debtor's discharge. In the § 523(a)(2) count, the landlord argued that the debtor fraudulently refused to pay the rent owed when she had sufficient income to make the payments. In support of denying her discharge under § 727, the landlord stated that at some unspecified time he had seen certain stereo and other electrical equipment in her apartment that was not disclosed in her schedules. After dismissing the complaint, the court granted the debtor's request for counsel fees observing "[i]t is obvious that the plaintiff did not make a reasonable inquiry to see if his complaint was warranted by existing law or a good faith argument in favor of changing the law. He simply proceeded with the adversary, filing questionable pleadings with puzzling legal foundations, causing the debtor to incur significant expenses in her defense." *Id.* at 837. The bankruptcy court in *Burse* awarded debtor attorney's fees under both Rule 11 and § 523(d), but analyzed the plaintiff's actions primarily under Rule 11.

13

Here, Tomey has taken a similar path. Following the creditors' meeting, when Debtor's counsel asked Tomey if he had consulted an attorney regarding his claim against Debtor, Tomey stated that " he felt he did not have to as he already had mapped out his intended strategy for a request of his debt being precluded from the bankruptcy. . . ." Complaint, p. 7. Therefore, he attended the creditors' meeting not to investigate whether facts might exist to support an exception to discharge, but to pursue his previously determined course of action. In his pleadings he admitted that he attended the creditors' meeting hoping to extract a settlement from Debtor.

Following the meeting, Debtor's counsel spoke with Tomey and questioned him as to whether he had obtained legal advice concerning the course of action he intended to pursue. Assuming that Debtor's counsel was attempting to intimidate him, Tomey reacted angrily, rebuffing the suggestion that he consult an attorney before filing suit. Shortly thereafter Tomey filed the Complaint commencing this adversary proceeding.

While the bankruptcy court in *Burse* primarily relied on Rule 11 as the basis for requiring the plaintiff/creditor to pay the debtor's attorney's fees, the court also awarded fees under § 523(d) finding plaintiff's position to be "substantially unjustified." Other courts have viewed a pro se plaintiff's flawed nondischargeability complaint more leniently.

In *Colabianchi v. Thomas (In re Thomas)*, 258 B.R. 167 (Bankr. N.D. Ohio 2001), the bankruptcy court rejected the debtors' request for fees under § 523(d) after judgment was entered against the landlord/creditor. The court described the plaintiff as a small businessman "with rational, albeit ultimately unfounded, hopes of excepting the subject debt from discharge." *Id.* at 169. The court cited evidence offered at trial that the landlord had allowed the debtors to reside at the rental property for eleven months without paying rent because of a series of promises offered by the debtors as to future payment. The court found that the landlord's belief that the debtors

14

had not dealt with him honestly was supported by deposition testimony of one of the co-debtors and bank statements obtained through a subpoena. The court also observed that the plaintiff was not a "sophisticated creditor seeking to manipulate the Debtors' anxieties about litigation costs," and thus, not the target of the statutory fee shifting provision. *Id; see also Stinson v. Robinson (Matter of Robinson),* 523 B. R. 822, 826 n.7 (Bankr. N.D. Ga. 2015) (holding that given creditor's pro se status, the complaint was substantially justified as it had a reasonable basis in fact and law and "it would be unjust to penalize her for having only a lay person's knowledge of the law."); *Sparks v. King (In re King)*, 258 B.R. 786, 798 (Bankr. D. Mont. 2001) (holding that admissions by debtor established that landlord's case was substantially justified).

Considering that a court is directed to apply the objective test of reasonableness when analyzing whether a complaint is substantially justified, the fact that a complaint has been filed by a pro se litigant is irrelevant. The Supreme Court has defined the term "substantially justified" as "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Peirce v. Underwood*, 487 U.S. 552, 565 (1988) (interpreting the term under the EAJA). "The inquiry is an objective one that ultimately turns on an assessment of reasonableness." *Cong. Fed. C. U. v. Pusateri (In re Pusateri)*, 432 B.R. 181, 197 (Bankr. W.D.N.C. 2010) (internal citations omitted). "The common thread running through all the cases dealing with 'substantial justification' is that the court's analysis focuses on the objective criteria upon which the § 523(a)(2)(A) action is based, not on the subjective motives of the creditor in bringing it" *In re McDermott*, No. 09-43858-MSH, 2010 WL 4638867, at *4 (Bankr. D. Mass. Nov. 8, 2010). Therefore, while a pro se litigant may be offered more bites at the apple to set forth a prima facie case, ultimately the test of whether a case is substantially justified is the same

15

for both represented and unrepresented parties. In this case, there was no objective reasonable basis for Tomey to file the Amended Complaint.

### 3. *Pro Se Status as a Special Circumstance.*

Even when a complaint is not substantially justified, a court may decline to award attorney's fees if special circumstances would make the award unjust. The particular "special circumstances" that allow a creditor to avoid a fee award are not well defined. *Conant*, 476 B.R. at 683-84 (citation omitted); *In re Hunt,* 238 F.3d at 1104. But the term must be "interpreted with reference to traditional equitable principles." *In re Hingson,* 954 F.2d 428, 429–30 (7th Cir.1992) *quoted in Hunt,* 238 F.3d at 1104. It does not authorize a court to base its decision on "idiosyncratic notions of equity, fair dealing, or family justice." *Id.* Whether special circumstances exist is determined in the context of the totality of the circumstances. *Conant*, 476 B.R. at 684 (citing *In re Hunt,* 238 F.3d at 1104–05).

In his answer to Debtor's motion, Tomey did not allege that there were any special circumstances that would make it unjust to require him to pay Debtor's attorney's fees. Throughout the proceeding, however, he has asserted that his status as a disabled, self-represented party entitles him to special consideration. As discussed above, a number of courts have considered the pro se status of a litigant as bearing on the issue of whether the filing of a § 523(d) complaint is substantially justified. Other courts have considered pro se status as a "special circumstance." Thus, in *Robinson* the court refused to impose attorneys fees against a pro se creditor because "it would be unjust to penalize her for having only a lay person's knowledge of the law." *Robinson*, 525 B.R. at 826 n.7. Similarly, in *In re Krysan*, 348 B.R. 348 (Bankr. E.D. La. 2005), the court declined to impose attorneys fees due to the "particular circumstances of the case." In a footnote referencing the circumstances, the court observed that

16

the creditor was pro se. In *Nicholson v. Nicolai (In re Nicolai)*, Adv. No. 05-275, 2007 WL 485990 (Bankr. D. N.J. January 31, 2007), the bankruptcy court reasoned that because § 523(d) was intended to curb abusive practices by institutional creditors, not an individual creditor in circumstances similar to the debtor, requiring the plaintiff to assume responsibility for the debtor's attorney's fees would be unjust. *Id.* at *2 (citing *Thomas*, 258 B.R. at 169); *accord Walter v. Walter (In re Walter)*, 50 B.R. 521, 523 (Bankr. D. Del. 1985) (observing that "Congress did not intend equally positioned private parties, absent an abusive filing, to bear the expense of the other's cost of litigation.")

Courts also have found special circumstances to exist when the plaintiff's complaint included counts under provisions of the Bankruptcy Code that do not authorize fee shifting. *See King*, 258 B.R. at 798 (holding that fees should not be awarded where plaintiff also argued a claim under § 523(a)(6)); *Swenby*, 529 B.R. at 710-11 (declining to award fees because complaint included counts under § 523(a)(4) and (a)(6)).

Similar considerations of a party's pro se status are present in fee shifting cases involving other federal statutes. In the context of suits filed under § 1988(b) of the Civil Rights Act, 42 U.S.C. § 1988(b), in language virtually identical to the special circumstances provision in § 523(d), a prevailing party may be awarded reasonable attorney's fees and costs in civil rights litigation "unless special circumstances would render such an award unjust." *Hensley v. Eckehart*, 461 U.S. 424, 429 ((1983). The Supreme Court has cautioned that in civil rights litigation, a pro se plaintiff "should not be punished for his failure to recognize subtle factual or legal deficiencies in his claim." *Hughes v. Rowe*, 449 U.S. 5, 15 (1980 ). More specifically, the Western District of Pennsylvania has noted that in civil rights cases, "[the Third] Circuit, . . . courts . . . typically do not award attorney's fees to defendants who have prevailed over pro se

17

plaintiffs." *Paschal v. Billy Beru, Inc.*, Civ.A.08-1144, 2010 WL 2510136, at *2-3 (W.D. Pa. June 17, 2010). Similar considerations should make a court reluctant to make a pro se creditor responsible for the attorney's fees of a debtor's attorney in § 523(a)(2) actions.

Accordingly, because Tomey is self represented, and is not the target of this statutory fee shifting provision, and because he included counts under § 727(a)(3), (4) and (5), which are not subject to § 523(d), I conclude that special circumstances exist that would render an award of counsel fees to Debtor unjust.

*B. The Rule 11 Motion*

Fed. R. Bankr. P. 9011 authorizes bankruptcy courts to impose sanctions against attorneys or pro se parties who violate Rule 9011(b). When a motion is presented to the Court, whether by an attorney representing a party or by a pro se party, the person filing the motion certifies that the motion is not presented for an improper purpose, that its arguments are warranted by existing law or by nonfrivolous arguments to modify existing law, and that factual assertions in the motion are supported by evidence. Fed. R. Bankr. P. 9011(b). If, after notice and an opportunity to respond, the court finds that a party or an attorney has violated the rule, appropriate sanctions, both monetary and otherwise, may be imposed. The purpose of the rule is to deter frivolous, baseless filings. *In re Schaefer Salt Recover, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008). It is not intended "to chill a person's enthusiasm or creativity in pursuing factual or legal theories," but it does impose a duty on both counsel and unrepresented parties to make a reasonable inquiry as to both facts and law. *Dura Sys., Inc. v. Rothbury Inv., Ltd.*, 886 F.2d 551, 556 (3d Cir. 1989) (quoting Advisory Committee Notes).

When sanctions are requested under Rule 11, three requirements must be met: (1) the motion must be made separate and apart from other motions or requests; (2) it must describe the

specific representations or conduct that violated the Rule, and (3) it may not be filed with the court unless, within twenty-one days of service of the motion, the non-movant has not withdrawn or corrected the challenged behavior. *In re Ryan*, 411 B.R. 609, 616 (Bankr. N.D. Ill. 2009) (citations omitted). In the matter before me, it is clear from the record that these three requirements have been met.[5]

Debtor's Rule 11 Motion is targeted at Tomey's conduct in filing and refusing to withdraw the "Counterclaim" for $5,006,000 in damages against Debtor's attorney for alleged "harassment." Debtor also avers that Tomey continues to reassert the allegations of the underlying complaint.[6] The "harassment" to which Tomey refers consists of several exchanges between Debtor's counsel and Tomey at the creditors' meeting and at other points in the litigation when Debtor's counsel warned Tomey that he could be sanctioned if he refused to withdraw a frivolous pleading.

Rule 11 imposes an affirmative duty on any party who signs a pleading, motion, or other paper to conduct a reasonable inquiry into the facts and the law before filing the document. *Bus. Guides, Inc. v. Chromatic Comm'n Enter., Inc.,* 498 U.S. 533, 551, (1991); *see Abdul–Akbar v. Watson,* 901 F.2d 329, 334 n. 2 (3d Cir.1990) (the objective standard of reasonableness under Rule 11 applies to pro se litigants). When I dismissed the Amended Complaint, I accepted the

---

[5]On October 16, 2015 Debtor sent correspondence to Tomey demanding withdrawal of the Counterclaim and including a draft copy of the Rule 11 Motion. A letter satisfies the safe-harbor requirements of Rule 11. *In re Ryan*, 411 B.R. 609, 617 (Bankr. N.D. Ill. 2009). The docket reveals that the Counterclaim has not been withdrawn as of the date of this Opinion.

[6]In a 16-page "response" to the notice setting the hearing on the § 523(d) and Rule 11 motions, Tomey continues to allege that the order dismissing the adversary case is "void," that the order of the District Court dismissing his appeal is "void," and that due process mandates that he be afforded a hearing on his Amended Complaint.

facts stated as true, but determined that even if true, they did not adequately state a cause of action for either excepting Tomey's debt from discharge or for denying Debtor's discharge. While Tomey may not agree with my ruling, at this point he is bound by the order and cannot avoid dismissal of the adversary proceeding by alleging that my order and the order of the District Court are void. I am reluctant to impose sanction on a pro se party that clearly does not understand the law and has no concept of how to plead a case. However, I am certain that Tomey understands that his patently absurd Counterclaim for damages in excess of $5 million, for which there is no support either factually or legally, is sanctionable.

Rule 11 sanctions may be imposed when the claim or motion is "patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988 (other citations omitted). Although the court may take a party's pro se status into account in evaluating his conduct, *Vukadinovich v. McCarthy,* 901 F.2d 1439, 1444 (7th Cir. 1990), his status as a non-lawyer does not confer a license recklessly to disregard the law. *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir.1986) ("one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets"). Before filing a pleading, a pro se litigant must have objective knowledge or belief that the motion or claim is well grounded in law and fact. In this case, the Counterclaim was patently frivolous and filed merely as a counterattack to the § 523(d) Motion. Tomey requested compensatory damages against Debtor's attorney of $6000, which was an attempt to recoup the debt now discharged in Debtor's bankruptcy case. He further requested $5 million in damages to "punish" Debtor's attorney for suggesting that Tomey should withdraw his complaint or risk the imposition of sanctions.

20

Although I believe Tomey's actions in filing the Counterclaim and in continuing to file pleadings reasserting claims dismissed in prior court orders is sufficient cause to impose sanctions, I also note that the docket reflects that Tomey also has filed numerous meritless, vexatious motions each requiring a response by Debtor and a ruling by this Court, which also support the imposition of sanctions.

The primary purpose of Rule 11 is to deter abuses of the judicial process so the minimum sanction that will serve "to deter repetition of such conduct or comparable conduct by others similarly situated" should be imposed. Fed. R. Bankr. P. 9011(c)(2). The sanctions may include "directives of a non-monetary nature," a penalty paid into court, and an order "directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.*

Here, it is undisputed that Tomey has limited means. Further, had Debtor not moved for a hearing on the sanctions motions this case would have been closed months ago. For these reasons, I will impose sanctions under Rule 11 against Tomey in the amount of $1,000 rather than in the full amount of Debtor's attorney's fees as requested in the motions. I will further order that Tomey may not file any further pleadings in this bankruptcy case that attempt to assert a cause of action to except Tomey's claim from discharge or to deny Debtor's discharge, without first obtaining leave of Court.

### III. Conclusion

For these reasons, the Court finds that special circumstances exist such that an award of Debtor's attorney's fees would be unjust under 11 U.S.C. § 523(d). But having determined that Tomey has violated Rule 11, he will be sanctioned in a monetary amount of $1,000, and he may not file any further pleadings in this bankruptcy case that attempt to assert a cause of action to

except his debt from discharge or to deny Debtor's discharge, without first obtaining leave of Court.

An appropriate Order will be entered.

By the Court,

Mary D France
Bankruptcy Judge

Date: October 14, 2016

22